**FRANKFELD et al. v. UNITED STATES.**

No. 6437.

United States Court of Appeals
Fourth Circuit.

Argued July 1, 1952.

Decided July 31, 1952.

Rehearing Denied Sept. 8, 1952.

Joseph Forer, Washington, D. C., Harold Buchman, Baltimore, Md., and Royal W. France, New York City, for appellants.

Leonard Boudin, New York City, and Dallas F. Nicholas, Baltimore, Md., on the brief of Emergency Civil Liberties Committee as amicus curiae.

I. Duke Avnet and Mitchell A. Dubow, Baltimore, Md., on the brief of certain members of the bar as amicus curiae.

Bernard J. Flynn, U. S. Atty., Baltimore, Md. (James B. Murphy and Frederick J. Green, Jr., Asst. U. S. Attys., Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a criminal case in which appellants, hereafter called defendants, were convicted of conspiracy to violate the provisions of section 2 of the Smith Act of June 28, 1940, 54 Stat. 670, 671, 18 U.S.C.A. § 2385. That section, as brought forward in the United States Code, is as follows:

"Whoever knowingly or willfully advocates, abets, advises, or teaches the duty, necessity, desirability, or propriety of overthrowing or destroying the government of the United States or the government of any State, Territory, District or Possession thereof, or the government of any political subdivision therein, by force or violence, or by the assassination of any officer of any such government; or

"Whoever, with intent to cause the overthrow or destruction of any such government, prints, publishes, edits, issues, circulates, sells, distributes, or publicly displays any written or printed matter advocating, advising, or teaching the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence, or attempts to do so; or

"Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence; or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof—

"Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both, and shall be ineligible for employment by the United States or any department or agency thereof, for the five years next following his conviction."

The indictment in the case charges defendants with conspiracy to violate this statute "by (1) unlawfully, willfully, and knowingly advocating and teaching the duty and necessity of overthrowing the Government of the United States by force and violence, with the intent of causing the aforesaid overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit; and by (2) unlawfully, willfully, and knowingly organizing, and helping to organize, as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, with the intent of causing the aforesaid overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit."

The language quoted was followed by allegations describing the conspiracy more in detail and setting forth that it was a part of the conspiracy (1) that defendants and other persons named would become members, officers and functionaries of "said Communist Party, knowing the purposes of said Communist Party" and would assume leadership and responsibility for carrying out its purposes, (2) that they would cause to be organized groups, clubs, sections and units of "said Communist Party" in the State of Maryland, in the District of Columbia, in the State of New York and elsewhere and would recruit and encourage recruiting members for the party "concentrating on recruiting persons employed in key basic industries and plants", (3) that they would publish and circulate and cause to be published and circulated "books, articles, magazines and newspapers teaching and advocating the duty and necessity of overthrowing and destroying the government of the United States by force and violence as soon as circumstances would permit", (4) that they would write and

cause to be written articles and directives in publications of the Communist Party, "teaching and advocating the necessity of overthrowing and destroying the Government of the United States by force and violence as speedily as circumstances would permit", (5) that they would conduct schools and classes in which recruits of the party would be instructed in its doctrines and purposes; (6) that they would agree upon and carry into effect detailed plans for "going underground" or maintaining the working efficiency of the party in secret in case of emergency, and (7) that they would use false names and do other things to conceal their identities and operations as members of the party. These allegations were followed by allegations of overt acts in fifteen separately numbered paragraphs.

Three questions are presented by the appeal: (1) whether the statute under which the prosecution was had is constitutional; (2) whether the evidence was sufficient to establish the guilt of the defendants under the statute; and (3) whether the case was correctly and fairly submitted to the jury. We think that all of these questions should be answered in the affirmative.

### The Constitutionality of the Statute.

■■ The validity of the statute under which defendants were convicted was thoroughly considered by the Supreme Court in Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, which affirmed the decision of the Court of Appeals of the Second Circuit reported in 183 F.2d 201; and little need be added to what was there said on the question of constitutionality. The question presented is not one as to freedom of speech or as to the right to organize for proper political purposes, but goes to the power of the government to outlaw and punish conspiracies whose purpose it is to overthrow the government itself by force and violence. Modern history is replete with instances of the danger to the government inherent in such conspiracies; and there is nothing in the Constitution or in any sound political theory which forbids it to take effective action against that danger. If it may take action to protect itself from being overthrown by force and violence, it necessarily follows that it may forbid conspiracies having that end in view and may punish such conspiracies as criminal. In the absence of conspiracy the "clear and present danger" rule may furnish a satisfactory criterion of criminality in the case of ordinary speeches advocating force and violence; but such rule has no practical application to advocacy of violence in connection with conspiracies to overthrow the government, for the danger of such conspiracies is ever "clear and present". They are pregnant with potential evil, which, while hidden from view in normal times, is likely to assert itself as an irresistable force when some national crisis presents an opportunity for a putsch or a coup d' etat. As was well said by Chief Justice Vinson in the case of Dennis v. United States, supra [341 U.S. 494, 71 S.Ct. 867]:

"Obviously, the words cannot mean that before the Government may act, it must wait until the putsch is about to be executed, the plans have been laid and the signal is awaited. If Government is aware that a group aiming at its overthrow is attempting to indoctrinate its members and to commit them to a course whereby they will strike when the leaders feel the circumstances permit, action by the Government is required. The argument that there is no need for Government to concern itself, for Government is strong, it possesses ample powers to put down a rebellion, it may defeat the revolution with ease needs no answer. For that is not the question. Certainly an attempt to overthrow the Government by force, even though doomed from the outset because of inadequate numbers or power of the revolutionists, is a sufficient evil for Congress to prevent. The damage which such attempts create both physically and politically to a nation makes it impossible to measure the validity in terms of the probability of success, or the immediacy of a successful attempt. * * *

"Likewise, we are in accord with the court below, which affirmed the trial

court's finding that the requisite danger existed. The mere fact that from the period 1945 to 1948 petitioners' activities did not result in an attempt to overthrow the Government by force and violence is of course no answer to the fact that there was a group that was ready to make the attempt. The formation by petitioners of such a highly organized conspiracy, with rigidly disciplined members subject to call when the leaders, these petitioners, felt that the time had come for action, coupled with the inflammable nature of world conditions, similar uprisings in other countries, and the touch-and-go nature of our relations with countries with whom petitioners were in the very least ideologically attuned, convince us that their convictions were justified on this score. And this analysis disposes of the contention that a conspiracy to advocate, as distinguished from the advocacy itself, cannot be constitutionally restrained, because it comprises only the preparation. It is the existence of the conspiracy which creates the danger. Cf. Pinkerton v. United States, 1946, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; Goldman v. United States, 1918, 245 U.S. 474, 38 S.Ct. 166, 62 L.Ed. 410; United States v. Rabinowich, 1915, 238 U.S. 78, 35 S. Ct. 682, 59 L.Ed. 1211. If the ingredients of the reaction are present, we cannot bind the Government to wait until the catalyst is added."

In his concurring opinion Mr. Justice Jackson reached the heart of the problem in the following language:

"The highest degree of constitutional protection is due to the individual acting without conspiracy. But even an individual cannot claim that the Constitution protects him in advocating or teaching overthrow of government by force or violence. I should suppose no one would doubt that Congress has power to make such attempted overthrow a crime. But the contention is that one has the constitutional right to work up a public desire and will to do what it is a crime to attempt. I think direct incitement by speech or writing can be made a crime, and I think there can be a conviction without also proving that the odds favored its success by 99 to 1, or some other extremely high ratio.

\* \* \* \* \* \*

"It is urged that since the conviction is for conspiracy to teach and advocate, and to organize the Communist Party to teach and advocate, the First Amendment is violated, because freedoms of speech and press protect teaching and advocacy regardless of what is taught or advocated. I have never thought that to be the law.

"I do not suggest that Congress could punish conspiracy to advocate something, the doing of which it may not punish. Advocacy or exposition of the doctrine of communal property ownership, or any political philosophy unassociated with advocacy of its imposition by force or seizure of government by unlawful means could not be reached through conspiracy prosecution. But it is not forbidden to put down force or violence, it is not forbidden to punish its teaching or advocacy, and the end being punishable, there is no doubt of the power to punish conspiracy for the purpose.

\* \* \* \* \* \*

"There is no constitutional right to 'gang up' on the Government."

Defendants argue that, even though the Smith Act be not unconstitutional in its entirety, the "membership" and "literature" provisions of the act must be held invalid and that this invalidates their conviction, since violation of these provisions was charged as being among the objects of the conspiracy. What was said by the Supreme Court in the Dennis case is a sufficient answer to this argument. There is no distinction in principle between advocating through the printing and distribution of literature the destruction or overthrow of the government and advocating it by word of mouth. So far as "membership" in an organization advocating such destruc-

tion or overthrow is concerned, such membership is condemned only where there is knowledge on the part of the accused of the unlawful purpose of the organization. Membership in an organization renders aid and encouragement to the organization; and when membership is accepted or retained with knowledge that the organization is engaged in an unlawful purpose, the one accepting or retaining membership with such knowledge makes himself a party to the unlawful enterprise in which it is engaged. Certainly it is within the power of Congress to forbid the circulation of literature advocating the forcible overthrow or destruction of the government or membership in an organization having such destruction as its purpose, where there is knowledge of such purpose on the part of one accepting or retaining such membership.

■■ The defendants contend that these provisions of the statute are unconstitutional because they do not require a "clear and present danger" as a condition of criminality; but it would be little short of absurd for a statute to forbid advocacy of the destruction of the government or membership in an organization formed for the purpose of such advocacy only in the event that they result in "clear and present danger". This would be to make the near success of an attempted crime the criterion of criminality for making the attempt. Defendants say that, in any event, the "clear and present danger" doctrine is a limitation upon the meaning of the statute and that no crime was charged because the indictment does not charge the existence of clear and present danger resulting from the crimes charged as the object of the conspiracy; but, as pithily pointed out by Mr. Justice Jackson in the Dennis case, conspiracy is a crime separate and apart from the crime which is its object; and it would be weird legal reasoning to hold that Congress has power to punish for the conspiracy only if there is clear and present danger from the crime which is its object. It is elementary that conspiracy to commit a crime may be punished even though the crime be not committed. A fortiori, it

may be punished without charging that the crime which is its object has given rise to "clear and present danger".

The Sufficiency of the Evidence.

The contention of the government on the trial was that the Communist Party of the United States had as its objective the overthrowing of the government of the United States by force and violence as speedily as circumstances would permit and that the defendants were active members and officers of the party, participated in its purposes and gave it active support with knowledge of its unlawful objective. We think that this contention was amply supported by the testimony.

With respect to the purposes and activities of the Communist Party of the United States, there was evidence of a number of witnesses that it was actively teaching and advocating the overthrow of the government by force and violence and the establishment of a dictatorship of the proletariat, as soon as circumstances would permit, and that it was training a hard core of party membership in methods of seizing and holding power and directing the course of revolution when a favorable opportunity for seizing power should arrive. It was shown that in 1944 the revolutionary purposes of the party were temporarily abandoned and a Communist Political Association organized to take its place and work for socialism through processes of peaceful change. In 1945, however, as the result of criticism of the French Communist Jacques Duclos and the leadership of William Z. Foster, who became Chairman of the Party, the Association was abandoned and the party was revived as an instrument of class struggle in accordance with the revolutionary philosophy of Marx, Engels, Lenin and Stalin, and went forward with the program which had been temporarily abandoned during the existence of the association.

There was abundant evidence, not only that the Communist Party printed and circulated the revolutionary classics of communism, advocating the class struggle and the forcible seizure of power by the proletariat, but also that the party maintained

schools in which members were indoctrinated in the principles and policies of the party and were instructed in the techniques to be followed in overturning existing governments and in seizing and holding power. Some members of the party were sent to Moscow for instruction; others were sent to schools maintained in New York City; and classes for instructing party members were maintained in Baltimore and other cities. Plans were made for infiltrating the army and navy with communists and to place communists in key labor positions in important industries. There was evidence also that party members were held to a strict party line by what they called "democratic centralism"; and that plans were prepared for the party to go "underground" and hold its members in line in support of its policies notwithstanding any action that might be taken by the government against it. What was said by Judge Learned Hand, speaking for the Court of Appeals of the Second Circuit, as to the sufficiency of the evidence in the Dennis case, 183 F.2d 201, 206–207, may properly be said of the evidence in the case before us. Said he:

> "There was abundant evidence, if believed, to show that they were all engaged in an extensive concerted action to teach what indeed they do not disavow—the doctrines of Marxism-Leninism. These doctrines were set forth in many pamphlets put in evidence at the trial, the upshot of which is—indeed an honest jury could scarcely have found otherwise—that capitalism inescapably rests upon, and must perpetuate, the oppression of those who do not own the means of production; that to it in time there must and will succeed a 'classless' society, which will finally make unnecessary most of the paraphernalia of government; but that there must be an intermediate and transitional period of the 'dictatorship of the proletariat,' which can be established only by the violent overthrow of any existing government, if that be capitalistic. No entrenched bourgeoisie, having everything to lose and nothing to gain by the abolition of capital-

ism, by which alone it can continue to enjoy its privileged position, will ever permit itself to be superseded by the means which it may have itself provided for constitutional change: e.g., by the ballot. No matter how solemnly it may profess its readiness to abide the result, and no matter how honestly and literally the accredited processes of amendment may in fact be followed, it is absurd to expect that a bourgeoisie will yield; and indeed to rely upon such a possibility is to range oneself among the enemies of Marxist-Leninist principles. Therefore the transition period involves the use of 'force and violence,' temporary it is true, but inescapable; and, although it is impossible to predict when a propitious occasion will arise, one certainly will arise: as, for example, by financial crisis or other internal division. When the time comes the proletariat will find it necessary to establish its 'dictatorship' by violence.

> "The defendants protest against this interpretation of their teaching and advocacy. They say that the use of 'force and violence' is no part of their program, except as it may become necessary after the proletariat has succeeded in securing power by constitutional processes. Thereafter, being itself the lawful government, it will of course resist any attempt of the ousted bourgeoisie to regain its position; it will meet force with force as all governments may, and must. If the defendants had in fact so confined their teaching and advocacy, the First Amendment would indubitably protect them, for it protects all utterances, individual or concerted, seeking constitutional changes, however revolutionary, by the processes which the Constitution provides. Any amendment to the Constitution passed in conformity with Article V is as valid as though it had been originally incorporated in it; the only exception being that no state shall be denied 'its equal Suffrage in the Senate.' It is. unnecessary to

quote in detail the many passages in the pamphlets and books, published and disseminated by the defendants, which flatly contradict their declarations that they mean to confine the use of 'force or violence' to the protection of political power, once lawfully obtained. The prosecution proved this part of its case quite independently of the testimony of its witnesses, though the jury might have relied upon that, had it stood alone. The sufficiency of the evidence therefore comes down to whether it is a crime to form a conspiracy to advocate or teach the duty and necessity of overthrowing the government by violence, and to organize the Communist Party as a group so to teach and to advocate."

■ The defendants contend here, just as did the defendants in the Dennis case, that the use of force and violence is no part of the program of the party and presented evidence to that effect; but the question thus presented was one for the jury to decide and its finding in accordance with the contention of the government was amply supported by the testimony of witnesses as well as by the documentary evidence adduced.

■ The connection of the defendants with the conspiracy in which the Communist Party was engaged was also amply supported by the testimony. The case as to them was not one of mere membership in the party depending upon "guilt by association". They were shown to be officers and teachers of the party occupying such positions with respect to its activities that the jury could well conclude that they necessarily had knowledge of the criminal purposes in which it was engaged. Only one of them, the defendant Meyers, took the stand to deny such knowledge and the jury was certainly justified in not believing his testimony to that effect, in view of the fact that he had admittedly been sent by the party to attend its training school in New York and according to the testimony of another witness had attended classes in which was taught the use of force and violence

in the seizure of political power. After his return from the training school he was made labor secretary of the party for Maryland and the District of Columbia and was later chairman of the party for Maryland and the District.

■ Defendant Philip Frankfeld was a member of the Young Communist group sent to Russia by the party to attend school in 1931 and remained active in the party for many years and up to the time of his indictment. He had attended its national conventions, had been chairman of the party in Maryland and the District of Columbia, had taught classes for the party and had worked on plans for sending communists into the armed forces of the United States. There is evidence that he had boasted that he was a professional revolutionist. Defendants Wood and Regina Frankfeld, wife of Philip Frankfeld, had at different times occupied the position of organizational secretary for the party in the District, and Regina Frankfeld had been sent to the New York training school for instruction. Defendant Blumberg had taught classes for the party and served as its secretary and treasurer in the District. Defendant Braverman had served as a member of the District Committee of the party, had been a candidate for chairman at one of its meetings, had served as its attorney, was a member of its "white collar club" and had conducted classes for it in his home. By reason of the positions held by these persons in the party and the active part taken by them in its work, the jury were amply justified in concluding that they had knowledge of its purposes. It is well settled that persons who join a conspiracy with knowledge of its unlawful purposes make themselves parties thereto and are equally guilty with those who originated it. Short v. United States, 4 Cir., 91 F.2d 614; Comeriato v. United States, 4 Cir., 58 F.2d 557; Luteran v. United States, 8 Cir., 93 F.2d 395, 399; Burkhardt v. United States, 6 Cir., 13 F.2d 841. As said by Mr. Justice Jackson in American Communications Association v. Douds, 339 U.S. 382, 433, 70 S.Ct. 674, 701, 94 L.Ed. 925, "* * * personal guilt may be incurred by

joining a conspiracy. That act of association makes one responsible for the acts of others committed in pursuance of the association."

### The Fairness of the Trial.

Defendants contend that the court submitted the case in such way as to permit the jury to convict them of conspiracy on the basis of mere membership in the Communist party, without knowledge on their part of any criminal purpose in which the party was engaged. There is no basis for any such contention. On the contrary the jury were expressly instructed that no one of the defendants could be convicted unless the jury should find guilty knowledge and intent on his part. Thus the judge, in the beginning of his charge, after defining the crime of conspiracy as charged in the indictment, told the jury explicitly:

"* * * unless you do find affirmatively beyond a reasonable doubt with respect to each of the defendants separately and respectively considered that they did conspire either among themselves or with others named in the indictment who are not defendants, to commit one or more of the prohibited acts, you should find a verdict of not guilty for such defendant who did not so conspire. And in the case of any one of the defendants I charge you that you should find that defendant not guilty unless you find that in so conspiring with another or others that he did so wilfully, knowingly and with the intent mentioned."

Later in his charge, in defining the issues with which the jury had to deal, the judge said:

"As I have heretofore indicated, the issues of fact in this case to be determined by the jury naturally divide themselves into two main questions. One is whether the jury finds beyond a reasonable doubt that the reconstitution of the Communist Party in 1945 constituted in effect a conspiracy to teach and advocate the overthrow of the government of the United States by force and violence when the time therefor became opportune, or to otherwise violate the Smith Act. The second important main question in the case is, if the jury finds that the government has established the first, did the six defendants in this case respectively join in said conspiracy wilfully and with knowledge of the purposes thereof and with the intent herein described, and continue therein within three years prior to the finding of the indictment?".

The judge made it clear that the Communist Party could teach the abstract doctrine of overthrowing the government by force so long as it did not advocate action to that effect, saying:

"And in this connection I further instruct you that the Smith Act is not aimed against the teaching of the mere abstract doctrine of overthrowing the government or the mere teaching .of the historical doctrine of Marxism or Leninism. The Communist Party and its members are entitled to do this so long as their teaching does not go to the extent of advocating action for the accomplishment of a violent revolution by language reasonably and ordinarily calculated to incite persons to such action."

With respect to the second main question in the case as theretofore defined, the connection of the defendants with the conspiracy if one had been proven, he charged the jury as follows:

"In passing on this second main question, you must consider the evidence with respect to the several defendants separately. The Government is not entitled to obtain a conviction against any one of the six defendants unless it establishes beyond a reasonable doubt, first, that such defendant joined the conspiracy by becoming an active member of the Communist Party knowing its aims and objectives as contended by the Government, and personally intending in accordance with said objectives and as an active member or officer or official of said Party to knowingly and wilfully advance or advocate its principles of teaching the duty or

necessity of overthrowing the Government as speedily as circumstances would permit, or with such intent to circulate and distribute literature which so teaches, or to organize or help to organize groups or assemblies of persons who so teach or advocate or encourage the overthrow or destruction of the government. You should not convict any of the defendants unless you find that they had this specific intent and were wilful and knowing in what they were doing. The Government must also prove in this connection that with such knowledge, purpose, and intent a defendant became and was or continued to be a member of such a conspiracy within the period of three years before the finding of the indictment."

After stating the government's contentions with respect to each defendant, he said:

"With respect to each defendant, the Government has the burden of proving that he or she joined in and participated in such conspiracy knowingly and wilfully and that such defendant entertained the specific intention to teach or advocate the duty or necessity of overthrowing or destroying the government of the United States by force and violence and that he or she intended to teach or advocate such doctrine or to organize groups for such purpose with the specific intent or purpose of bringing about such overthrow as speedily as circumstances would permit. The Government must establish this beyond a reasonable doubt."

In the light of these instructions, there is no ground whatever for the contention strenuously made by defendants that the jury were allowed to convict on the basis of mere party membership or guilt by association.

 Another contention is that conviction was permitted of a crime not charged in the indictment. The basis of this contention is that the judge in his charge interpreted the indictment as charging conspiracy to commit all of the crimes denounced by the Smith Act, whereas the defendants say that the indictment does not charge conspiracy to violate the "literature", "organization" or "membership" provisions of the act. Defendants' argument is that violation of these provisions was not charged as an object of the conspiracy in paragraph one of the indictment. We think that there is no merit, whatever, even of a technical sort, in this contention. While paragraph one of the indictment charges conspiracy to violate the Smith Act by teaching the overthrow of the government by force and by organizing the Communist Party for that purpose, the subsequent paragraphs down to those charging the overt acts set forth in detail how the conspiracy was to be carried out and specifically charge that it was a part of the conspiracy to do things which would violate the "organization", "literature" and "membership" provisions of the statute. To say in the indictment that it was a part of the conspiracy to do things which constituted a violation of these provisions manifestly charges a conspiracy to violate the provisions.

 It is argued that since the Smith Act defines as a substantive offense the organization of a society or group to destroy the government by force, conspiracy may not be predicated of the organization of the Communist Party for that jury to so consider the organization of the party. It is sufficient answer to this that the substantive offense defined by section 2(3) of the Smith Act was for "any person" to organize or help to organize any society, group, etc. and that conspiracy to commit the offense was forbidden by section 3 of that act, now consolidated with the general conspiracy statute in 18 U.S.C. § 371. Cooperative action on the part of a number of persons in forming a political party having as its object the overthrow of the government clearly violates the conspiracy provision. Even if what defendants did rendered them guilty of a violation of the crime defined by section 2(3), this would not preclude their being prosecuted under the conspiracy section; for it is

elementary that there may be conviction both of conspiracy to commit a crime and of the substantive offense which is the object of the conspiracy. Banghart v. United States, 4 Cir., 148 F.2d 521 and cases there cited. A contention very similar to that made here was made in the case of Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67, and nothing need be added to what was there said in answer to the contention. And see Old Monastery Co. v. United States, 4 Cir., 147 F.2d 905, 907. If it be argued that the crime defined by section 2(3) is in essence the crime of conspiracy, the position of the defendants is not helped; for the result would be merely that such conspiracy is thus made criminal by two sections of the act.

Defendants complain because evidence of transactions with which they were in no way connected was admitted to establish that the Communist Party was a conspiracy of the sort denounced by the statute. This was clearly proper. The case was tried on the theory, not that the defendants were the original conspirators or founders of the Communist Party who formulated the purpose of overthrowing the government by force, but that they entered the conspiracy afterwards by becoming members of the party with knowledge of the criminal purposes in which it was engaged and by aiding and assisting in carrying forward its program. It was not necessary that the defendants be connected with evidence relied on to establish the criminal purpose of the party. What was necessary with respect to them, was that there be evidence showing their connection with the party in such way that knowledge by them of such purpose could properly be inferred; and this the judge carefully explained to the jury. Of course, if such evidence had not been produced, the defendants would have been entitled to an acquittal; but once it was produced, evidence establishing the criminal nature of the conspiracy was admissible against them even though it related to matters which occurred prior to their becoming members. United States v. Buckner, 2 Cir., 108 F.2d 921, 930; 15 C.J.S., Conspiracy, § 92, pages 1141–1144. Defendants stress lack of proof of any agreement on the part of defendants; but conspiracies of the sort here involved are properly thought of, not as agreements, but as partnerships in criminal purposes or as organizations for furthering such purposes. Guilt is established when an organization with such criminal purposes is shown to have existed and defendants are shown to have joined it with knowledge of such purposes.

Another contention of the defendants is that there was error on the part of the trial judge in permitting witnesses for the government who were found to have expert knowledge with respect to the teachings and purposes of the Communist Party to testify with regard thereto, since the matter involved was one of the ultimate issues for the decision of the jury. It is difficult to see, however, how better evidence of the teachings and purposes of a party could be obtained than from the testimony of those who heard and participated in the teachings sponsored by the party. In so far as the testimony related to the fact of the teachings of the party, its admissibility does not admit of argument. In so far as it involved matter of opinion, this related to a matter involving specialized knowledge, as to which the opinion of experts is unquestionably admissible, even though it relates to a matter which is for the decision of the jury. Transportation Line v. Hope, 95 U.S. 297, 298, 24 L.Ed. 477, "Where the matter under inquiry is properly the subject of expert testimony, it is no objection that the opinion sought to be elicited is upon the issue to be decided." Builders Steel Co. v. C. I. R., 8 Cir., 179 F.2d 377, 380; Francis v. Southern Pacific Co. 10 Cir., 162 F.2d 813, 817; Mutual Life Ins. Co. v. Frost, 1 Cir., 164 F.2d 542, 547; Mutual Benefit Health & Accident Ass'n v. Francis, 8 Cir., 148 F.2d 590, 594; Wigmore on Evidence 2d ed. vol. 1, sec. 675. There was no invasion whatever of the province of the jury. They were allowed to consider the expert testimony along with the documentary and factual evidence upon which it was based and all other evidence in the case in arriving at a verdict. See United States v. Johnson,

319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546.

Other contentions were made in the briefs and arguments which we need not deal with because so obviously lacking in merit as not to warrant discussion. There were multitudinous objections to the admission and rejection of testimony, but none which would justify our disturbing the verdict of the jury. The case was fairly tried, defendants were afforded fair opportunity to present their defense and the jury was correctly instructed as to the law applicable in the premises. We find no ground for awarding a new trial to any of the defendants.

Affirmed.

#### On Petition for Rehearing.

PER CURIAM.

A petition for rehearing has been filed but it presents no question which we have not already fully considered. Argument is again made that the "literature" and "membership" provisions of the Smith Act are unconstitutional; and we say again, as we said in our original opinion, that we think that the reasoning of the Supreme Court in the case of Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, sustains the validity of these as well as the other provisions of the act. Defendants argue that the presence of a clear and present danger is necessary under the decision of the Supreme Court in the Dennis case to conviction under the act. As we attempted to point out in our original opinion, with quotation from the opinion of Mr. Chief Justice Vinson, if "clear and present danger" be necessary to conviction, it was present in the conspiracy here just as it was in the Dennis case. The same conspiracy was involved in both cases. As to the contention that the indictment is defective because it does not allege the existence of clear and present danger, the Dennis case is also a sufficient answer to that. Other contentions of the petition are no more than a rehashing of arguments fully dealt with in the opinion which need not be further considered.

Petition denied.