The UNITED STATES of America, Plaintiff-Appellee,

v.

Claude Mack LIGHTFOOT, Defendant-Appellant.

No. 11470.

United States Court of Appeals Seventh Circuit.

Jan. 12, 1956.

Writ of Certiorari Granted March 26, 1956.

See 76 S.Ct. 543.

Pearl M. Hart, Chicago, Ill., John J. Abt, New York City, George W. Crockett, Jr., Detroit, Mich., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., Kevin T. Maroney, Atty., Dept. of Justice, Washington, D. C., William F. Tompkins, Asst. Atty. Gen., William F. O'Donnell, John F. Lally, John H. Davitt, Attys., Dept. of Justice, Washington, D. C., John Peter Lulinski, James B. Parsons, Asst. U. S. Attys., Chicago, Ill., Northern District of Ill., for appellee.

Francis Heisler, Chicago, Ill., Malcolm P. Sharp, President, National Lawyers Guild, New York City, John T. McTernan, Los Angeles, Cal., Warren Krinsky, Chicago, Ill. (Henry Heineman, F. Raymond Marks, Jr., Chicago, Ill., of counsel), for American Civil Liberties Union, amicus curiae.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

Defendant was convicted after a jury trial on a one count indictment which charged violation of the "membership"

clause of Section 2 of the Smith Act. 54 Stat. 671, 18 U.S.C. § 2385.[1] The indictment was returned on May 14, 1954 and charged: 1) That, continuously since July 26, 1945, the Communist Party of the United States has been a "society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit." and 2) That, continuously since July 26, 1945, the defendant has been a member of the Communist Party of the United States of America well knowing during all of said period that said Communist Party "was and is a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit, and said defendant intending to bring about such overthrow by force and violence as speedily as circumstances would permit."

Defendant moved to dismiss the indictment on the following grounds: 1) Section 2 of the Smith Act and the indictment violate the First and Fifth Amendments; 2) The indictment is barred by Section 4(f) of the Internal Security Act of 1950;[2] and 3) Section 2 of the Smith Act, as supplemented by sections 2, 3 and 4 of the Communist Control Act of 1954,[3] deny the defendant due process by depriving him of the right to a fair and impartial trial. The trial court denied the motion to dismiss.

At the trial, defendant's counsel stipulated that defendant had been a member and an official of the Communist Party during the period covered by the indictment. However, defendant was not a mine-run member of the Communist Party, nor was he an innocent worker, unhappy with his lot, who joined up with the Party in the expectation that it would eventually better his economic position. The evidence disclosed that Lightfoot was an intelligent, dedicated, crusading Communist, who rose to a position of great influence in his Party, not only in the midwest, but also on the national level.

The proof was that Lightfoot had been a member of the Communist Party since at least 1934. He was early a Section Organizer for the Young Communist League as well as a member of the District Bureau of that League. In 1936 he was a delegate to the Sixth Congress of the Young Communist International which is affiliated with the World Communist Party. Later, he was a Section Organizer for the Communist Party and was a member of the District Committee of the Illinois-Indiana District of the Party.

Lightfoot spent considerable of his time in teaching the various doctrines, aims and program of the Communist Party. He taught in Workers Schools as well as a considerable number of inner-party classes. He taught in District Training Schools which were secret schools for hardening and training leadership in Communist activities.

I. "* * *

"Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government (in the United States) by force or violence; or *becomes or is a member of,* or *affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof—*

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both, * * *."

(The so-called membership clause is the portion italicized.)

2. Section 4(f) of the Internal Security Act of 1950, Title 50 U.S.C.A. § 781 et seq., provides: "Neither the holding of office nor membership in any Communist organization by any person shall constitute *per se* a violation of subsection (a) or subsection (c) of this section or of any other criminal statute. * * *"

3. Sections 2, 3, and 4 of the Communist Control Act of 1954, 68 Stat. 775–776, 50 U.S.C.A. §§ 841, 842, 843, find as a fact that the object or purpose of the Communist Party of the United States is to overthrow the government of the United States by force and violence.

These schools were taught only by leading party functionaries. In 1938 and thereafter, he taught under the supervision of the Director of the Chicago Workers Schools and the Educational Director of the Illinois-Indiana District of the Communist Party. He taught such subjects as Marxism-Leninism; History of the Communist Party of the Soviet Union; and other courses relating to the theory and practices of Communism. To teach some of these courses he had to be theoretically skilled in and have detailed information about Communist doctrine.

Lightfoot was early recognized as one of the top Communist leaders of the Illinois-Indiana District, and he functioned for many years as a full-time employee and representative of the Party. He was a paid employee of the Party as early as 1937. He made many speeches upon behalf of the Communist Party, at times speaking in praise of the success of the Russian Revolution under the leadership of Lenin and Stalin. At a party meeting in the Ashland Auditorium in Chicago in 1947, Lightfoot spoke of his experiences before the Illinois Legislative Committee which was investigating subversive activities, and he promised protective secrecy for the party records. At this assembly, he advised the membership on the use of the underground.

At the 1948 State Convention of the Party, Lightfoot was appointed as a regional director of a new party set-up to bring about Communist infiltration in the fourteen basic or vital community industries. On November 10, 1950 Lightfoot delivered the principal address at a Communist meeting to celebrate the 33rd anniversary of the Russian Revolution. On various business and public records defendant listed himself as Executive Director of the Communist Party of Illinois, and the Secretary of the Illinois State Committee of the Communist Party. Up to the time of the indictment he handled Communist Party funds for the Illinois group. In 1950 he was elevated to the position of Member of the National Committee of the Communist Party of the United States, a position which he held up to the time of the indictment.

Defendant moved for a directed verdict and for a judgment of acquittal which motions were denied. Later, he made motions in arrest of judgment and for a new trial which were likewise denied. Defendant urges the verdict and judgment of guilty are not supported by the evidence. Defendant says there was no direct evidence that he had knowledge of any teaching or advocacy of proscribed doctrine by the Communist Party or that he intended to bring about the violent overthrow of the Government of the United States. Defendant insists the Government's case rested entirely upon a series of inferences.

The Government offered evidence both documentary and by expert witnesses which, if believed, proved that for a number of years prior to 1944, and from and after July 26, 1945, the Communist Party of the United States was a political organization dedicated to the principles of Marxism-Leninism, and its aim was the destruction of the existing social order (which it called "Imperialism") as well as the destruction of "Imperialistic Government" including the United States of America. The Party taught that to reach the goal of the "Proletarian Revolution and the Dictatorship of the Proletariat", actual class revolt would be necessary, and violence and bloodshed inevitably would result.

The proof disclosed that the program of the Communist Party in the United States called for the development of a close, well-disciplined organization with a highly trained staff of professional revolutionaries. The ultimate goal and objective of the Party was unchangeable, but the day-to-day program of activities might change as conditions and circumstances would require. As an illustration, when the United States went to war with Fascist Germany, Hitler was regarded in many parts of the world as the great anti-communist symbol. The

revolutionary purposes of the Communist Party in the United States were temporarily abandoned, and a Communist Political Association was organized to take its place. One of the ostensible objectives of the Association was to work for socialism through processes of peaceful change. However, as soon as Hitler was eliminated in 1945, the Political Association was abandoned, and the Communist Party in the United States was reconstituted along the lines of Marxism-Leninism, as an instrument of class war and the dictatorship of the proletariat. The Party went forward with the program which had been temporarily abandoned, and this program continued during the years covered by the indictment.

Upon evidence very similar to and in many respects identical with that received in the case at bar, the Court of Appeals of the Second Circuit, in United States v. Dennis, 183 F.2d 201, summarized some of the proof as to the organization, aims and activities of the Communist Party in this country, which summary was quoted by the United States Supreme Court in the Dennis case on appeal, 341 U.S. 494, 498, 71 S.Ct. 857, 861, 95 L.Ed. 1137, as follows:

"* * * But the Court of Appeals held that the record supports the following broad conclusions: * * * that the Communist Party is a highly disciplined organization, adept at infiltration into strategic positions, use of aliases, and double-meaning language; that the Party is rigidly controlled; that Communists, unlike other political parties, tolerate no dissension from the policy laid down by the guiding forces, but that the approved program is slavishly followed by the members of the Party; that the literature of the Party and the statements and activities of its leaders, petitioners here, advocate, and the

general goal of the Party was, during the period in question, to achieve a successful overthrow of the existing order by force and violence."

■ We hold that substantial evidence supports the charge contained in the first paragraph of the indictment, and that the jury was fully justified in finding beyond a reasonable doubt that the Communist Party in the United States has, from and after July 26, 1945, been a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit. A number of courts have held that evidence substantially the same to that appearing in the record before us, warranted a similar finding.[4] It might be noted that in the majority opinion in Schneiderman v. United States, 320 U.S. 118, at page 153, 63 S.Ct. 1333, at page 1350, 87 L.Ed. 1796, heavily relied upon and frequently cited by defendant, the Court said, "We do not say that a reasonable man could not possibly have found, as the district court did, that the Communist Party in 1927 actively urged the overthrow of the Government by force and violence. But that is not the issue here. * * *"

We next consider whether there was substantial proof in the record that the defendant was a member of the Communist Party well knowing that it taught and advocated the doctrine of overthrowing and destroying the government of the United States by force and violence, and that said defendant intended to bring about such overthrow by force and violence as speedily as circumstances would permit.

The evidence showed that for many years prior to the indictment Lightfoot was completely familiar with the objectives of the Communist Party in the

**4.** United States v. Dennis, 2 Cir., 183 F.2d 201, affirmed 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; Frankfeld v. United States, 4 Cir., 198 F.2d 679; United States v. Mesarosh, 3 Cir., 223 F.2d 449; Scales v. United States, 4 Cir., 227 F.2d 581.

United States, and with the literature of the Party which advocated such objectives. Defendant was intimately acquainted with the "classical" writings of Marx, Engels, Lenin and Stalin which advocated the violent overthrow of capitalistic governments as speedily as circumstances would permit. In fact, defendant contributed articles to Party publications which stressed the importance of such "classics" in the Communist program. Perhaps his knowledge is best shown by the fact that Lightfoot was a teacher in the District Training Schools which were the secret schools for training Communist leaders. The teachers in these schools were leading Party functionaries. At no time did Lightfoot disavow the teachings of Communist leaders or writers.

There was direct testimony from the former educational director of the Illinois-Indiana District of the Communist Party that under his direction and supervision Lightfoot taught, among other subjects, Marxism-Leninism, and the History of the Communist Party of the Soviet Union. From the exhibits offered by the Government it appears that Russia, where the existing social order was overthrown by a violent revolution, was held up as an example of what could be accomplished by the Communists in this country.

We hold that the evidence proved that defendant had knowledge that the Communist Party of the United States advocated the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit.

Defendant insists that there is nothing in the record to show that he personally had the specific intent to bring about the overthrow of the government of the United States by force and violence, and he quotes from Schneiderman v. United States, 320 U.S. 118, 136, 63 S.Ct. 1333, 87 L.Ed. 1796, that membership in an organization with knowledge of its purposes is not evidence of the member's intent to effectuate such purposes.

■ We think the evidence was sufficient to prove not only defendant's knowledge that the aim and program of the Communist Party of the United States was the overthrow of our Government by force and violence as speedily as circumstances would permit, but that defendant likewise had such intent. Defendant was well acquainted with the Party doctrine of "Democratic Centralism" which required all members of the Party to accept, without question, the teachings of the Communist leadership under penalty of severe disciplinary action or expulsion.

■ " * * * the state of a man's mind must be inferred from the things he says or does." American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 690, 94 L.Ed. 925. The law assumes every man to intend the natural consequences which one standing in his circumstances and possessing his knowledge would reasonably expect to result from his acts. Cramer v. United States, 325 U.S. 1, 31, 65 S.Ct. 918, 89 L.Ed. 1441. "Actions of the accused are set in time and place in many relationships. Environment illuminates the meaning of acts, as context does that of words. What a man is up to may be clear from considering his bare acts by themselves; often it is made clear when we know the reciprocity and sequence of his acts with those of others, the interchange between him and another, the give and take of the situation." Cramer v. United States, 325 U.S. 1, 32–33, 65 S.Ct. 918, 934, 89 L.Ed. 1441.

Lightfoot's years of devotion to the Communist Party in the United States, and his zeal in obtaining recruits for those doctrines which the Party advocated, and his energy in carrying out the objectives and program of the Party, all were matters properly considered by the jury upon the question of intent. United States v. Flynn, 2 Cir., 216 F.2d 354, 360. Furthermore, there was direct evidence that at Lake Ivanhoe School conducted by the Party, while instructing a class on the procedures for the revolution

of the proletariat the defendant stated: "If we have to spill blood, we will."

Although defendant's counsel argues there is no proof of defendant's advocacy or of his belief in the program of the Communist Party to overthrow the Government of the United States by force and violence in what may be an effort of justification in case it was found the defendant did so advocate, he quotes the following statement from Thomas Jefferson: "The tree of liberty must be refreshed from time to time, with the blood of patriots and tyrants. It is its natural manure." [5]

We are satisfied the evidence was ample both to require that the case be submitted to the jury and to sustain the verdict rendered.

Three of defendant's claims of error are: the testimony of the witness Lautner should have been excluded as hearsay; that testimony of the witness Meyer should have been excluded as remote and irrelevant; the excerpts of the "classics" should have been excluded as prejudicial and irrelevant.

■■ John Lautner joined the Communist Party in 1929, and except during his period of army service, was a Communist Party organizer, teacher and leader until January 17, 1950. He has testified in a number of prosecutions under the Smith Act as an expert witness as to the teachings and program of the Communist Party of the United States. It seems clear that he was qualified as an expert witness on the subject about which he testified. In any event, whether the witness was qualified as an expert was a matter confined to the discretion of the trial judge. Cohen v. Travelers Ins. Co., 7 Cir., 134 F.2d 378, 384. No abuse of discretion has been shown. Furthermore, the matters about which he testified were material to the issues of the case at bar. We hold there

was no error in receiving Lautner's testimony.

■ Frank S. Meyer testified that from 1934 to 1942 he had been closely associated with the defendant in the Illinois Communist Party. He testified relative to a conversation with defendant in 1940 with reference to the latter's teaching the History of the Communist Party of the Soviet Union. Although this occurred some years before the period covered by the indictment, it was admissible to show defendant's knowledge and intent. United States v. Dennis, 2 Cir., 183 F.2d 201, 231–232; United States v. Mesarosh, 3 Cir., 223 F.2d 449, 454. As stated by Judge Learned Hand in the Dennis case, 183 F.2d at page 231, "How far back of the commission of the crime one may go is a matter of degree, and within the general control of the judge over the relevancy of evidence. In the case at bar, there is not the least reason to hold that his discretion was abused. * * *" We hold there was no error in receiving Meyers' testimony.

■ Defendant also contends that it was error to admit into evidence excerpts from the Marxism-Leninism "Classics." These so-called "Classics" stress the importance of Marxism-Leninism "as a guide to action" and treat openly the subject of force and violence in the Proletarian Revolution and the establishment of the Dictatorship of the Proletariat. We think these excerpts were admissible not only as probative of the teachings and program of the Communist Party material under paragraph 1 of the indictment, but many of them were directly connected with the defendant in his capacity as teacher in the Party Schools, and were properly admitted as bearing upon his knowledge and intent.

Defendant claims the trial court erred in refusing to order the production of a

---

5. Taken from a private letter to William Smith written in 1787 prior to the adoption of the Constitution of the United States which in Article V made provision for amendment, whereby our form of government could be changed in a peaceful manner.

report made to the FBI by the witness Brzek who was a member of the Communist Party from 1943 to 1947. In the latter year Brzek attended classes taught by defendant Lightfoot at a Communist School conducted in Ivanhoe, Wisconsin. It was at one of these classes Brzek testified that defendant stated: "If we have to shed blood, we will." On cross-examination Brzek testified he had made a report with reference to said classes to the Milwaukee office of the FBI. The report thus made was not in the courtroom, nor did the witness use a copy thereof to refresh his memory. The motion to produce was made after the Government had closed its case. Defendant offered no oral testimony. On his claim of error, defendant relies principally upon Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447.

In Gordon the Court said, 344 U.S. at pages 418–419, 73 S.Ct. at page 373: "By proper cross-examination, defense counsel laid a foundation for his demand by showing that the documents were in existence, were in possession of the Government, were made by the Government's witness under examination, were contradictory of his present testimony, and that the contradiction was as to relevant, important and material matters which directly bore on the main issue being tried: * * *."

■ In the case at bar nothing was developed on cross-examination to the effect that the report to the FBI conflicted with the direct testimony of Brzek. Thus an essential element of the rule stated in Gordon was not here present. No proper foundation was laid for the production of the report, and the trial court was correct in denying the motion to produce. United States v. Echeles, 7 Cir., 222 F.2d 144, 152–153; Starr v. Commissioner of Internal Revenue, 7 Cir., 226 F.2d 721, 724; Jencks v. United States, 5 Cir., 226 F.2d 540, 553; Jencks v. United States, 5 Cir., 226 F.2d 553, 560–561.

■ Furthermore, we think that the District Court, under the rule stated in Goldman v. United States, 316 U.S. 129,

132, 62 S.Ct. 993, 995, 86 L.Ed. 1322, properly denied the defendant's motions. The Court, in that case, used this language:

"We think it is the better rule that where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced and to inspect them. Where, as here, they are not only the witness' notes, but are also part of the Government's files, a large discretion must be allowed the trial judge. We are unwilling to hold that the discretion was abused in this case."

To the same effect: Iva Ikuko Toguri D'Aquino v. United States, 9 Cir., 192 F.2d 338, 375; Imperatore v. United States, 2 Cir., 193 F.2d 409, 410; Neal v. United States, 5 Cir., 203 F.2d 111, 118; United States v. Mesarosh, D.C.W. D.Pa., 116 F.Supp. 345, 349, 350.

A more difficult question is presented by defendant's claim that the membership clause of the Smith Act is unconstitutional on its face and as applied by the trial court. Defendant insists this clause imputes guilt solely by reason of association.

■ There is no doubt that an individual, or indeed, a group of individuals, may advocate and teach the desirability of a change in our form of government no matter how unpopular, radical or revolutionary the proposal may be, provided such changes are to be accomplished by processes which the Constitution provides. Had the defendant confined his advocacy and teaching for a change in our form of government within the limits of constitutional processes, he would clearly have been protected by the First Amendment.

Defendant's counsel makes frequent reference to the opinion of the Court in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, to demonstrate that guilt is personal, and that members of a party or organization need not necessarily agree with the pronouncements of their leaders. Overlooked or ignored in such argument is

the proof in the case at bar showing the rigid discipline imposed on Communist Party members during the period covered by the indictment. The cornerstone Party doctrine of "Democratic Centralism" left no room in the Party for members who might not agree with the program of the overthrow of our Government by force and violence. Party members were bound to accept without question the teachings of the Communist leadership. The defendant was one of the most zealous of those teachers.

 The United States Supreme Court has consistently recognized the inherent value of free discourse. However, it is settled that the right to free speech is not an unlimited, unqualified right but, as the Court said in Dennis, 341 U.S. at page 503, 71 S.Ct. at page 864: " * * * the societal value of speech must, on occasion, be subordinated to other values and considerations."

Defendant admits that in Dennis the Supreme Court sustained the provisions of the Smith Act making it a crime for any person to wilfully and knowingly advocate the overthrow of the Government of the United States by force and violence; to organize or help organize any group which does so; or to conspire to do so.[6] The Court specifically held that a clear and present danger existed. However, defendant argues that the Dennis case marks the outermost limit of the Court's sanction of an abridgement of rights within the area guarded by the First Amendment. Defendant points out that the membership clause of the Smith Act was not an issue in Dennis, and insists that in the period covered by the indictment, no clear or present danger existed.

It was in Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, that Justice Holmes announced the doctrine that: " * * * The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that will bring about the substantive evils that Congress has a right to prevent." The latest word from the Supreme Court on the subject of clear and present danger appears in the Dennis case.

We have before us an example of the ever-recurring problem presented to courts of striking a balance between freedom for the individual and the security for our country and government. "Self-preservation is a high prerogative of any sovereignty." Communist Party of the United States v. Subversive Activities Control Board, D.C.Cir., 223 F.2d 531, 543. "There is no constitutional right to 'gang up' on the government." Justice Jackson in Dennis v. United States, 341 U.S. 494, 577, 71 S.Ct. 857, 901, 95 L.Ed. 1137. In Dennis the Court said, 341 U.S. at page 501, 71 S.Ct. at page 863: "No one could conceive that it is not within the power of Congress to prohibit acts intended to overthrow the Government by force and violence." And again, 341 U.S. at page 509, 71 S.Ct. at page 867: "Overthrow of the Government by force and violence is certainly a substantial enough interest for the Government to limit speech. Indeed, this is the ultimate value of any society, for if a society cannot protect its very structure from armed internal attack, it must follow that no subordinate value can be protected."

In explaining the phrase " 'clear and present danger' " the Court, in Dennis said 341 U.S. at page 509, 71 S.Ct. at page 867: "Obviously, the words cannot mean that before the Government may act, it must wait until the *putsch* is about to be executed, the plans have been laid and the signal is awaited. If Government is aware that a group aiming at its over-

---

6. The Court did not limit its holding of constitutionality to the organizing clause of this subsection, but held, 341 U.S. at page 516, 71 S.Ct. at page 871:

"We hold that §§ 2(a)(1), 2(a)(3) and 3 of the Smith Act, do not inherent-

ly, or as construed or applied in this instant case, violate the First Amendment and other provisions of the Bill of Rights, or the First and Fifth Amendments because of indefiniteness."

throw is attempting to indoctrinate its members and to commit them to a course whereby they will strike when the leaders feel the circumstances permit, action by the Government is required. The argument that there is no need for Government to concern itself, for Government is strong, it possesses ample powers to put down a rebellion, it may defeat the revolution with ease needs no answer. For that is not the question. Certainly an attempt to overthrow the Government by force, even though doomed from the outset because of inadequate numbers or power of the revolutionists, is a sufficient evil for Congress to prevent. The damage which such attempts create both physically and politically to a nation makes it impossible to measure the validity in terms of the probability of success, or the immediacy of a successful attempt."

In United States v. Flynn, 2 Cir., 216 F.2d 354, 367, the Court held that the danger found in the Dennis case had not abated by the summer of 1951, the date of the Flynn indictment. But defendant argues that at the date of the indictment of the case at bar no shooting war was in progress and, therefore, conditions had changed. Furthermore, at the time of the oral argument before this Court, defendant's counsel seemed to be deeply impressed by the Spirit of Geneva, and he professed to believe that the Geneva Conference had resulted in a complete relaxation of International tensions. The period covered by the indictment is, of course, the critical period for us to consider. However, in any case, whether a clear and present danger existed cannot depend on whether the faces of the Communist Leaders in Russia are suffused with smiles. We need only make passing mention of the fact that at the time of the writing of this opinion, the smiles have been replaced with scowls, and the sugary words of such leaders have been supplanted by words of vituperative condemnation.

■ Only one other Court of Appeal has passed upon the claim that the membership clause of the Smith Act is un-constitutional. In Scales v. United States, 4 Cir., 227 F.2d 581, the Fourth Circuit held the membership clause of the Smith Act to be constitutional. See also Frankfeld v. United States, 4 Cir., 198 F.2d 679, 683, 684. We agree with the decision in Scales, and hold the membership clause of the Smith Act to be constitutional.

Defendant urges he was deprived of a trial by a fair and impartial jury as a result of the enactment of the Communist Control Act of 1954, wherein Congress declared that the Communist Party advocates the overthrow of the Government of the United States by force and violence. Defendant does not contend that any prejudice on the part of any of the jurors in this case appears from the record. Rather, he urges it must be implied that a jury presumed to know the law will not ignore the statutory findings.

■ In effect, it is defendant's position that all persons subject to prosecution under the Smith Act are immunized from prosecution indefinitely, or at least as long as the Communist Control Act remains a part of the laws of this nation. We do not agree. If any jury had any such prejudgment, the instructions of the Court cured their error. Furthermore, whether any such belief existed in the mind of any juror, might have been discovered on the *voir dire* examination.

Defendant further contends prosecution of the offense charged in the indictment is barred by section 4(f) of the Internal Security Act, 50 U.S.C.A. § 783(f), which provides that:

"Neither the holding of office nor membership in any Communist organization by any person shall constitute *per se* a violation of subsection (a) or subsection (c) of this section or of any other criminal statute."

Defendant argues that the purpose and intent of the section was specifically to bar prosecution of Communists under the membership clause of the Smith Act.

■ A similar argument was overruled in the Scales case. We quote with

approval the following from that opinion:

"The purpose of this provision, as defendant correctly argues, was to insure the enforceability of the registration provisions of the act by making the privilege against self-incrimination unavailable as a defense to failure to register. The language of the section relied on, however, provides merely that neither holding of office nor membership in a Communist organization shall constitute *per se* a violation of a criminal statute. It does not purport to exempt from criminal liability membership in an organization advocating the overthrow of the government by force and violence where such membership is acquired or held with knowledge of the criminal purpose in which the organization is engaged. In other words, mere membership in the party is not a crime. Membership with knowledge of the criminal purpose of the organization remains a crime.

" * * * Even though the Communist Party has such purpose, membership *per se* is not made a crime under the Smith Act; and it is only membership *per se*, which is exempted from criminal prosecution under section 4(f) of the Internal Security Act. That no modification of the provisions of the Smith Act was intended by Congress in the passage of the Internal Security Act of 1950 is made abundantly clear by section 17 of the Internal Security Act, 64 Stat. 1003, 50 U.S.C.A. § 796, which provides: 'The foregoing provisions of this title shall be construed as being in addition to and not in modification of existing criminal statutes.' In view of this interpretation which Congress itself placed on the statute at the time of its passage, there is no occasion for further discussion as to its effect upon the Smith Act. The charge of the court, heretofore quoted, made it clear that defendant could not be convicted because of mere membership in the party." [227 F.2d 589]

Defendant claims error was committed in other comparatively minor matters. Suffice to say, we have considered his arguments in respect thereto and find them to be without merit.

The judgment of conviction is

Affirmed.