UNITED STATES of America, Appellee,

v.

John Francis NOTO, Appellant.

No. 381, Docket 25156.

United States Court of Appeals
Second Circuit.

Argued June 11, 1958.

Decided Dec. 31, 1958.

Charles J. McDonough, Buffalo, N. Y., for appellant.

John O. Henderson, U. S. Atty. for the Western Dist. of New York, Buffalo, N. Y. (Lawrence P. McGauley, John C. Keeney, and John J. Keating, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before HINCKS and WATERMAN, Circuit Judges, and RYAN, District Judge.

RYAN, District Judge.

This is an appeal from a judgment of conviction and sentence for violation of the membership provision of the Smith Act, 18 U.S.C. § 2385.[1] The indictment charged:

1. That from January 1946 up to November 1954 (the date of the filing of the indictment), the Communist Party has at all times been a group of persons who teach and advocate the forcible overthrow of the Government of the United States as speedily as circumstances would permit;

2. That continuously from January 1946, the defendant has been a member of the Communist Party well knowing that it was a group that taught and advocated the forcible overthrow of the Government as speedily as circumstances would permit, and that defendant intended to bring about such overthrow by force and violence as speedily as circumstances would permit.

The appeal raises questions as to the sufficiency of the evidence, the constitutionality of the statute and the validity of the indictment in view of Section 4(f) of the Internal Security Act 1950, 50 U.S.C.A. § 783(f). This case is one of first impression in this Circuit, although the Fourth and Seventh Circuits have upheld convictions under the membership clause. Scales v. United States, 4 Cir., 1956, 227 F.2d 581 and Id., 4 Cir., 260 F.2d 21, certiorari granted 79 S.Ct. 289; United States v. Lightfoot, 7 Cir., 1956, 228 F.2d 861.[2]

The evidence presented must be viewed in the light of the trial court's charge to determine the questions raised as to suffi-

---

1. The statute provides:
 "Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow of any such government by force or violence; or becomes or is a member of, or affiliates with, any such society, group or assembly of persons, knowing the purpose thereof—Shall be fined not more than $10,000 .or imprisoned not more than ten years, or both * * *"

2. Both these cases were reversed by the Supreme Court (355 U.S. 1 and 2, 78 S.Ct. 9 and 10, 2 L.Ed.2d 19) on the authority of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, following which Scales was retried in February 1958 and the conviction again affirmed. Defendant here concedes that there is no Jencks question in this case.

ciency and constitutionality. The charge required the jury to make an affirmative finding on four elements before it could convict:

1. The Communist Party is a group which teaches and advocates the overthrow of the United States Government by force and violence as speedily as circumstances will permit;

2. The defendant was a member of the Communist Party of the United States;

3. While a member defendant had knowledge that the Party taught the forcible overthrow of the Government as soon as circumstances would permit;

4. Defendant individually intended to bring about the overthrow and destruction of the Government by force and violence as soon as circumstances would permit.

In addition, the jury was required to find that these four elements co-existed at some time between September 1, 1951 and November 8, 1954 the period covered by the Statute of Limitations (18 U.S.C. § 3282 as amended September 1, 1954). If the evidence was sufficient to justify the jury's findings on the four elements this will dispose of appellant's challenge to the evidence. We hold that the jury's verdict was supported by the proof on trial.

The nature of the Communist Party as a group which teaches and advocates the overthrow of the Government by force and violence as speedily as circumstances would permit was abundantly established much in the pattern we reviewed and affirmed in United States v. Dennis, 2 Cir., 183 F.2d 201, affirmed 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, and United States v. Flynn, 2 Cir., 216 F.2d 354. Thus, the systematic teaching in Party schools of the principles of Marxism-Leninism together with the so-called Communist "classics" were set forth for the jury. As to the "classics" appellant concedes in his brief that they "all predicted and advocated the eventual overthrow of capitalism by the revolution of the proletariat, to be accomplished by force and violence if necessary." The witness Lautner brought these teachings to the Party schools over a period of many years. That the Party equated the principles of Marxism-Leninism with force and violence was attested to further by its condemnation at the National Convention in 1945 of the "peaceful coexistence" policy of the American Communist Party under the leadership of Browder, described by the Party as a "rejection of the Marxian concept of the revolutionary initiative of the working class," and the reconstitution of the Party and reeducation of its members along lines of Marxist orthodoxy. It would serve no useful purpose for us here to review in detail the many documents, books and periodicals before the jury which established and justified a finding that the aims and avowed purposes of the Party was one of dedication to the revolutionary Marxist-Leninist line.

In addition, there was proof of the Party's plan of industrial concentration by which the Party's activities were concentrated in basic industries and the largest plants, and key national figures shifted into the leadership of these concentration districts and areas, thereby attempting to give the Party the power to paralyze the nation's industrial capacity, in furtherance of its ultimate aim. Then, too, there was proof that in 1948 the overt call to forcible overthrow espoused at the Convention was changed because of the Smith Act prosecution of its top leaders, and that consultations were had with European Communist leaders and preparations made based on international experience to take the hard core members of the Party underground, and place them in trade unions and mass organizations. This move was designed to enable the Party—which in time of prosecution suffered a 90% reduction in membership—to function as an organized group under any and all conditions through absolutely loyal members unconditionally dedicated to and particularly suited to carrying out the Party's objectives. There was evidence that as late

as Labor Day in 1951, within the indictment period, the defendant as one of those members stated that he was waiting for instructions from his superiors as to what he should do if apprehended, that he might find it necessary to flee the country and that he was willing to endure any hardship and even lay down his life if necessary in order that the work of the Party might continue. When defendant disappeared into the employ of one of the basic industries, in disguise and under a false name, it was reasonable for the jury to infer that his move had been dictated by his superiors in the interests of the Party.

The sum of these activities when viewed against the background of the systematic teaching of Marxism-Leninism, the program adopted in 1945, the rigidity of purpose of the Party and the tenacity of the hard core members despite prosecution, and the absence of any evidence of accomplishment or abandonment of their purpose was sufficient basis to support an inference that the character of the Party as a group dedicated to the violent overthrow of the Government, established in prior years, continued unaltered through the statutory period. United States v. Schneiderman, D.C., 106 F.Supp. 892, 899; 2 Wigmore on Evidence § 437, 3rd ed. 1940.[3]

There is do dispute in this case as to the second element; this is conceded in appellant's brief: "there was no question about Noto's membership in the Communist Party." He was a paid employee and organizer. His income tax return for the year 1951 showed him to be employed as a sub-district organizer and the Party's withholding tax return for the third quarter ending September 30, 1951 and dated October 18, 1951, signed by the defendant as Chairman of the Party showed him to be a paid employee.

The third element, defendant's knowledge of the Party's illegal teaching and advocacy, and the fourth element his intent were also amply supported by proof which justified the jury's finding. Defendant states in his brief, "the Government proved that the defendant was extremely active in the affairs of the Party in Buffalo and Western New York." He was a well indoctrinated member having been taught in Party schools the Marxist-Leninist principles by use of the Communist "classics." These, as we mentioned above, were the same source materials to which we adverted in the Dennis case as proving the prosecution's contention of force and violence "quite independently of the testimony of its witnesses. * * *" 183 F.2d at page 206.

Defendant had occupied positions of importance in the Party; he had been the Greater Buffalo region organizer in 1947, the sub-district organizer of Western New York in 1947–48; Chairman of the Erie County Communist Party and District Chairman of the Party Upstate District. He lectured in these capacities at various meetings on the classical aims and objectives of the Party and apparently considered himself sufficiently well versed in the Party's objectives to predict the time when capitalism would be destroyed and the Government overthrown. In the Fall of 1951 when he was endeavoring to induce Regan, a fellow member, to become active in the Party, he stated that he would stand behind the actions of a particular leader (Ellis) as one who represented Communist Party Policy; that he was familiar enough with the Party's tactics to anticipate that he might be directed to submit to arrest, be bailed out and then jump his bail. In October, 1951 he picked up copies of the Daily Worker at Regan's house; on September 15 or 17th he collected money toward furnishing bail to arrested leaders. Defendant actively participated in the industrial concentration program pointing out the steel industry in his

---

3. When the existence of an object, condition, quality or tendency at a given time is in issue, the prior existence of it is in human experience some indication of its probable persistence or continuance at a later period. The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end.

area as the prime Party target. Considering the ultimate Marxist-Leninist goal, concentration on the industry which is probably the most important to the Country's economy suggests the attempt to gain for the Party the ability to sabotage and paralyze the entire nation—a coup vital to the Party's objective to attack when the time was ripe. He assisted the concentration program of getting undercover Communists into key shops and departments within the automobile industry. The jury could well have concluded from these activities that defendant was intent upon the ultimate Marxist-Leninist purpose of forceful overthrow by aiding in the proximate task of industrial concentration. United States v. Silverman, 2 Cir., 248 F.2d 671, 685–686.

But it was in the area of the Party's underground apparatus that defendant was particularly active. The witness Lautner was charged by the Party with activating the underground. In this capacity he met with the defendant as one of the three top Party men in the Buffalo area. Defendant was placed in charge of the underground work in all New York State north of Poughkeepsie. Defendant participated in obtaining and secreting machines for printing Party material. He instructed Party subordinates to meet secretly with other Party officials under assumed names. He was awaiting instructions from his superiors and expressed a willingness to follow instructions to leave the Country and even "lay down his life," if necessary, thus emphasizing the unswerving loyalty and devotion exacted of those which made up the elite 10% segment of the underground. Thereafter, he disguised his appearance by growing a mustache and cutting his hair short in order to conceal his identity. He also located homes in which to hide Party members and Party equipment and collected funds to help them. He further cloaked his identity by going to work from 1953 to 1954 in a plant in Newark, N. J. under an alias with a false Social Security number.

While it is true that, apart from the specific instances mentioned, most of the direct evidence of defendant's activities related to a period prior to September, 1951, it provided adequate basis for inferring that his knowledge, intent and responsibility to the Party in carrying out its purposes continued through the following years, since "the running of the statute of limitations cannot empty a man's mind of knowledge of this sort." Scales v. United States, 4 Cir., 227 F.2d 581, 591; United States v. Mesarosh, 3 Cir., 223 F.2d 449; United States v. Schneiderman, D.C., 106 F.Supp. 892.

■ We conclude that the Government proved by sufficient evidence that the defendant was an active member in an organization teaching and advocating the violent overthrow of the Government well knowing the aim and purpose of the Party and with intent to achieve its illegal purpose.

We turn now to consider the defendant's argument against the constitutionality of the membership clause of the Smith Act. Two arguments are raised: (1) the statute fails to include intent as an element of the offense and (2) it imputes guilt solely by association. Under the first, defendant urges that the prosecution fell into error by "gratuitously adding to the charge" the further charge "and said defendant intending to bring about such overthrow by force and violence as speedily as circumstances would permit." His argument goes on to assert that the membership clause of the statute "does not require proof of advocacy, teaching or organization by the defendant, or proof of any overt act by the defendant." Since no intent is implicit in membership, defendant says, the statute penalizes membership without proof of personal intent to overthrow the Government by violence, thereby violating the rights of free speech and assembly in the First Amendment as well as due process guaranteed by the Fifth Amendment.

■ There is no doubt that the membership as well as the advocacy clause limits rights of free speech and assembly guaranteed by the First Amendment. These rights however are

not absolute and were "not, intended to give immunity for every possible use of language." Dennis v. United States, 341 U.S. 494, at page 534, 71 S.Ct. 857, at page 880, 95 L.Ed. 1137, quoting Frohwerk v. United States, 249 U.S. 204, 206, 39 S.Ct. 249, 63 L.Ed. 561 (concurring opinion of Mr. Justice Frankfurter). The constitutionality of the infringement must be determined by weighing against it the need for protection to our form of government. In other words, the infringement must be justified by the necessity of this type of protection to the government and this in turn must be decided by the particular activity sought to be punished or forbidden. Does the activity proscribed present an effective means of bringing about or does it create a clear and present danger that the undesirable result—the violent overthrow of the Government—will be brought about?

While we agree that the membership clause does not require proof of advocacy, we do not agree that it does not require proof of intent on the part of the member to bring about the violent overthrow and that it penalizes membership *per se*. Although the statute does not spell out the element of intent, the knowledge of purpose which it does literally require before a conviction may be had is that kind of knowledge from which, if established, it may or must be said that intent inescapably follows. In Dennis, supra, the Supreme Court imputed into the Smith Act "as an essential element of the crime proof of intent of those who are charged with its violation to overthrow the Government," and while the charge before it was on the advocacy clause the Court did not limit its examination of the Act and conclusion as to its validity, to that clause but held that:

"The structure and purpose of the statute demand the inclusion of intent as an element of the crime. Congress was concerned with those who advocate and organize for the overthrow of the Government. Certainly those who recruit and combine for the purpose of advocating overthrow intend to bring about overthrow" (341 U.S. at page 499, 71 S.Ct. at page 862).

That knowing membership in the Communist Party warrants inferences of personal intent and guilt was frankly recognized by Mr. Justice Jackson, in American Communications Association v. Douds, 339 U.S. 382, 432, 70 S.Ct. 674, 700, 94 L.Ed. 925, when he wrote (concurring and dissenting opinion):

"Membership in the Communist Party is totally different [from membership in lawful political parties.] The Party is a secret conclave. Members are admitted only upon acceptance as reliable and after indoctrination in its policies, to which the member is fully committed. They are provided with cards or credentials, usually issued under false names so that the identification can only be made by officers of the Party who hold the code. Moreover, each pledges unconditional obedience to party authority. Adherents are known by secret or code names. They constitute 'cells' in the factory, the office, the political society, or the labor union. For any deviation from the party line they are purged and excluded.

"Inferences from membership in such an organization are justifiably different from those to be drawn from membership in the usual type of political party. Individuals who assume such obligations are chargeable, on ordinary conspiracy principles, with responsibility for and participation in all that makes up the Party's program."

An argument similar to that here raised was rejected both by the Fourth and Seventh Circuits in the Scales and Lightfoot cases, supra. The Fourth Circuit equated the act of knowing membership for the purposes of imputing intent with an act of knowingly joining a conspiracy to overthrow the Government and held in the second opinion that on the issue of constitutionality the distinction was without significance:

"It is too clear for argument that membership in an organization with knowledge of its purposes and intent to make them effective is a joint rather than an individual undertaking which gathers its strength from an association or group of individuals inspired by a common purpose." 260 F.2d 21, 26.

The indictment charged and the jury was required to find intent, as all "membership" cases have so far; this was not under our interpretation of the statute a capricious addition to the charge for requiring criminal intent is the normal course rather than the exception in our jurisprudence. As Dennis establishes, Congress could constitutionally make criminal the teaching and advocacy of the violent overthrow of the Government. We think it follows that it could also proscribe high level, active membership unremittingly devoted and pledged to the accomplishment of that end.

 The second constitutional argument raised by defendant is that the membership clause imputed guilt solely by association. This argument is a corollary of defendant's further contention that prosecution under the membership clause was barred by Section 4(f) of the Internal Security Act of 1950.[4] The identical argument was raised and disposed of in Scales and Lightfoot, supra, and we agree with its disposition.

The answer to defendant's contention is, as we have just discussed, that the membership clause does not punish membership *per se;* the additional requirements of knowledge of the criminal purpose of the group and intent to carry out that purpose take this prosecution out of the infirmities which defendant fears. Under this clause of the Act it is not association with tolerance of the activities and aims of the other members which is forbidden, even if it be true that the mere fact of membership gives aid and encouragement to the group, but personal desire and dedication, with full knowledge and awareness, to bring the end to fruition. The guilt must be personal and independent; it may not be vicariously imputed in order to convict under the clause. Moreover, the legislative history of the Internal Security Act shows no evidence that Congress envisioned much less intended a bar to membership prosecutions under the Smith Act. 96 Cong. Rec. 15198, 14190. Indeed Section 4(f) was enacted by Congress to preserve the constitutionality of the registration provisions in the Internal Security Act and Congress expressly stated in Section 17 (50 U.S.C.A. § 796):

"The foregoing provisions of this title shall be construed as being in addition to and not in modification of existing criminal statutes."

As we have said we need not here speculate and attempt to resolve subtle distinctions in the case of one who may innocently have joined the Party for some Utopian idea because this defendant was shown to be a leader steeped in Party discipline and dedicated to its objectives. Clearly this is not a prosecution of membership *per se* but of membership with knowledge and criminal intent.

 Defendant complains that the trial court failed to make a finding that a clear and present danger existed of violent overthrow of the Government. This element, as the Supreme Court ruled in Dennis is a question for the trial court to determine for itself. 341 U.S. 510, 71 S.Ct. 867. What we said in United States v. Flynn, supra, disposes of this issue. The factors considered by the trial court and affirmed by us in the latter case were applicable to this case. Indeed, the indictment periods in this case and in Flynn were overlapping. During much of the period from September 1951 to November 1954, "The Korean conflict was raging and our relations with the Communist world had moved from cold to hot war * * *" (216 F.2d 367).

4. That statute provides: "Neither the holding of office nor membership in any Communist organization by any person shall constitute *per se* a violation of subsection (a) or subsection (c) of this section or of any other criminal statute."

■ The trial court properly declined defendant's requested charges (1) that the Government failed to prove a clear and present danger of forcible overthrow of the Government and (2) that the jury must find a clear and present danger before it could convict. As both Dennis and Flynn make explicitly clear this is a question for the court and not the jury. By declining the requested charges and submitting the case to the jury on the four elements we have discussed the trial judge implicitly found the existence of a clear and present danger. We agree that it did exist.

■ This case does not confront the Court with the prosecution of a leader, organizer or teacher of the Communist Party charged during the indictment period with advocating and teaching the duty and necessity of overthrowing the Government by force and violence or of organizing a society to so advocate. Consequently the incitement to action test enunciated in Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L. Ed.2d 1356 and applied by us in Silverman, supra and United States v. Jackson, 2 Cir., 257 F.2d 830 is inapplicable. The crime for which appellant was indicted, brought to trial and convicted is what determines the sufficiency of the evidence and not another similar, even related, crime. The clauses of the Act are disjunctive and quite separable, and as appellant concedes or maintains there is no requirement that a member or affiliate be shown to have been advocate, teacher or organizer. True it is that this defendant was verly likely all three, prior to his going underground, but he was not indicted for pre-underground activities or for teaching and advocating. Proof of these activities was offered and very properly considered by the jury as evidence bearing on his knowledge and intent during the statutory years when he was charged with being a member.

■ That the words of the statute defining the particular activity proscribed are to be carefully considered and their meaning strictly adhered to was made clear in Yates. There the Court went into a careful analysis of the exact meaning of the word "organize" and reversed that part of the indictment which so charged concluding that the activities of the defendant during the statutory period although termed "organizational" corresponded more to the carrying on of an existing body than to the literal meaning of the word—the creating of such body.

"* * * we find nothing which suggests that the 'organizing' provision was intended to reach beyond this, that is to embrace the activities of those concerned with carrying on the affairs of an already existing organization. Such activities were already amply covered by other provisions of the Act, such as the 'membership' clause, and the basic prohibition of 'advocacy' in conjunction with the conspiracy provision, and there is thus no need to stretch the 'organizing' provision to fill any gaps in the statute" (354 U.S. 308, 77 S.Ct. 1070).

Similarly with respect to the words "teach" and "advocate" it found a consciousness on the part of Congress, in enacting the statute, that these words had been in the past construed as terms of art carrying a special and limited connotation. As defendant points out Congress should not be deemed to have used language which was redundant or mere surplusage and the terms "conspiracy, organization, advocacy, teaching and knowing membership were all specifically, separately and disjunctively enumerated as violations of the Act" (appellant's brief).

■ The distinction lies in the fact that in the "advocacy" clause it is the act of producing a state of mind in another which is forbidden, i. e. a "stirring of people to action" a "call to action" as distinguished from mere "teaching with evil intent." Yates, supra. Under the "membership" clause it is the person's own intent to overthrow the Government coupled with activity on his part to achieve the end which is aimed at. Since defendant was not indicted for activities

the end result of which were to culminate in action on the part of others, it was not necessary that the evidence of his activities meet the Yates test. Upon sufficient proof all four elements of the crime charged in the indictment were submitted under a proper charge to the jury which found the defendant guilty.

The conviction is affirmed.